## Winton, administrator of Sarah E. Benedict, deceased, *against* Barnum.

Where *A*, by a bill of sale, transferred to his daughter *B*, the wife of *C*, certain articles of household furniture, for her sole and separate use, and subject to her sole direction; *C* had no knowledge of such bill of sale, during the life-time of *B*, but after her death, he had knowledge of it, and assented to the conveyance; *D*, a creditor of *C*, afterwards attached these articles as the property of *C*, and had them sold; in an action, brought by the administrator of *B*, against *D*, for such conversion, it was held, that the property vested immediately and absolutely in *C*, and the plaintiff had no such interest therein as would enable him to sustain an action at law for the conversion.

In such case, an agreement between *A* and *C*, that *C* would hold the property for the use of his wife, and, upon her decease, transfer it to her legal representative, would not show any such title or right of possession in such representative, as would enable him to sustain an action at law for the conversion of the property.

*Fairfield,*
July, 1848.
———
Winton
*v.*
Barnum.

THIS was an action on the case, brought by *Judson Winton*, as administrator of *Sarah E. Benedict,* deceased, to recover for the conversion, by the defendant, of certain articles of household furniture. The declaration contained three counts. The first was in trover, in common form, founded upon a *lawful* possession by the plaintiff. The second varied from it, principally, by alleging, that "to the sole possession and enjoyment of the property, the plaintiff, as such administrator, was *justly* and *equitably* entitled." The third count stated a sale and delivery of the property, by *Joseph Silliman* to *Sarah E. Benedict,* for her sole and separate use, whereby the legal title became vested in her husband ; and he thereupon undertook and faithfully promised said *Silliman* to hold the property for the use of his wife, during her life, and upon her decease, to deliver it to her representatives, as a portion of her estate ; which he was prevented from doing, by the attachment and conversion of the defendant.

The cause was tried, upon the general issue, closed to the court, at *Fairfield, April* adjourned term, 1848, before *Ellsworth,* J.

On the trial, the plaintiff, to prove his title to the property, offered in evidence the following bill of sale :

" Know all men by these presents, that, for a valuable consideration, received to my full satisfaction of *Sarah E. Benedict,* wife of *Cornelius Benedict,* of *Bridgeport,* I do hereby sell, assign, and transfer, unto the said *Sarah E.,* for her sole and separate use, and subject to her sole direction and controul, the articles contained in the annexed schedule.

In witness whereof, I have hereunto set my hand, this 6th day of *August* 1843.          *Joseph Silliman,* Agent."

To this bill of sale was annexed a schedule of the articles in question. It was admitted, that, at the date of the instrument, *Sarah E. Benedict* was the lawful wife of *Cornelius Benedict,* and a daughter of *Joseph Silliman.*

The plaintiff offered evidence to prove, that the furniture was bought and paid for, by *Silliman,* and the bill of sale given, to secure the furniture to his daughter. But no evidence was offered to prove, that the husband, during the lifetime of his wife, had any knowledge of the bill of sale. It

was however proved, that soon after her death, and before the attachment by the defendant, he had such knowledge, and assented to the conveyance.

The defendant, as a deputy-sheriff, afterwards attached the furniture, as the property of the husband, and subsequently sold it upon an execution in favour of certain creditors of the husband.

To the admission of the evidence, offered by the plaintiff, to prove his title, the defendant objected; and he further claimed, that if it were received, it proved, that *Benedict*, the husband, had acquired an absolute and legal title to the property, so that it could be attached, by his creditors. But the court admitted the evidence, and, upon the strength of it, found the issue in favour of the plaintiff.

The defendant thereupon moved for a new trial; and the questions of law were reserved for the advice of this court.

*Loomis* and *Morris*, in support of the motion, contended, 1. That the evidence was inadmissible. It is to be observed, in the first place, that the title set up by the plaintiff, in the first count of his declaration, is a *legal* title to the property in question. Secondly, the evidence offered, if it is permitted to have the force of the doctrines of the *English* court of chancery, does not establish a legal title in the plaintiff. All that could be claimed under it, would be a title in equity; and the only redress must come from a court of equity. 2 *Sw. Dig.* 122. 125, 6, 7, 8. *Reeve's Dom. Rel.* 170. 2 *Sto. Eq.* 102. *Marshall* v. *Rutton*, 8 *Term R.* 545. But thirdly, under the *English* chancery rule, it cannot have that effect; for in this case, it is a purchase by the wife, during coverture, and without the knowledge or consent of the husband. Fourthly, in *Connecticut*, the doctrines of the common law, so far as this question is concerned, prevail; and the doctrines of the *English* courts of chancery, have been expressly rejected. *Dibble* v. *Hutton*, 1 *Day*, 221. *Nichols* v. *Palmer*, 5 *Day*, 47. *Morgan* v. *Thames Bank*, 14 *Conn. R.* 102. *Fourth Ecclesiastical Society in Middletown* v. *Mather*, 15 *Conn. R.* 587. The case of *Baldwin* v. *Carter*, 17 *Conn. R.* 201. does not conflict with this position, nor the case of *Grant*, in bankruptcy, 5 *Law Rep.* 11.

2. That sound policy requires, that the doctrines of the

common law should still be preserved and maintained ; because they are simple, well understood, and adapted to the best interests of society.    *Dibble* v. *Hutton,* 1 *Day* 221. and the other cases above referred to.

3. That the evidence would not support a recovery on the third count, because it showed no title or right of possession in the plaintiff, but a legal title and actual possession in *Benedict,* the husband.

*Dutton,* contra, contended, 1. That a wife may have separate property in *Connecticut. Fitch* v. *Ayer,* 2 *Conn. R.* 143.    *Cornwall* v. *Hoyt,* 2 *Conn. R.* 420.    *Jones* v. *Ætna Ins. Company,* 14 *Conn. R.* 50.    *Parsons* v. *Hosmer,* 2 *Root,* 1.    *In re Grant,* 5 *Law Rep.* 11.

2. That an agreement between the husband and wife, before marriage, or between the husband and wife and a third person, after marriage, will be sustained.    *Nichols* v. *Palmer,* 5 *Day,* 47.    *Baldwin* v. *Porter,* 12 *Conn. R.* 473. *Andrews* v. *Andrews,* 8 *Conn. R.* 579.    *Selleck* v. *Selleck,* 8 *Conn. R.* 85. n.    *Brown* v. *Slater,* 16 *Conn. R.* 192. *Baldwin* v. *Carter,* 17 *Conn. R.* 201.

3. That the writing furnishes evidence of an implied agreement, on the part of the husband, to deliver the property to the wife's representatives. 1 *Sw. Dig.* 176.

4. That the husband being insolvent, the interference of the defendant to prevent the fulfillment of the agreement, is an actionable injury.    *Coleman* v. *Wolcott,* 4 *Day,* 6.    *Wolcott* v. *Coleman,* 2 *Conn. R.* 324.    *Bulkley* v. *Storer,* 2 *Day,* 531.    1 *Sw. Dig.* 562.    *Yates* v. *Joyce,* 11 *Johns. R.* 136. *Lane* v. *Hitchcock,* 14 *Johns. R.* 213.

5. That as the whole beneficial interest was in the plaintiff, and justice has been done, a new trial will not be granted.

WAITE, J.    The only material question, presented upon this motion, is, whether the bill of sale from *Silliman* to Mrs. *Benedict,* conveyed to her such an interest in the furniture, as that upon her decease, it passed to her administrator, in such manner, as that he may sustain an action at law for the conversion of the property.

In a recent case, we have said, that "no rule is better established than that personal property, accruing to the wife,

during coverture, vests immediately and absolutely in the husband; or the *principle that husband and wife are but one in law, and her existence, in legal consideration, is merged in his.* Such property is liable to be taken by the creditors of the husband, and applied in satisfaction of their debts." *Morgan* v. *Thames Bank*, 14 *Conn. R.* 102.

Here was a conveyance of personal property to a married woman; and unless there is something in the case to relieve it from the operation of that rule, the property vested immediately and absolutely in her husband, and the defendant had a legal right to attach it, as his property, and apply it, as he did, in satisfaction of the debts of the husband.

It is said, that here was a conveyance to her sole and separate use. But this, at law, can make no difference. Whatever the form of the conveyance, if made directly to her, the property vests in her husband. Nor can the interest of the parties vary the rule, unless executed in a manner authorised by law.

A man may intend to convey, by deed, an estate in fee-simple, and use the clearest language indicative of that intent; and yet, if he omit the word *heirs*, the deed will convey but an estate for life.

The object of the father, in this case, might have been accomplished, by a conveyance to a trustee for her use. In such case, the legal title would have vested in the trustee; and a court of chancery would compel him, if necessary, to execute the trust. He could sustain an action at law for any unlawful conversion of the property.

But the difficulty here is, the property, instead of being conveyed to a trustee, was conveyed to the wife; and then the rule of law, treating the husband and wife as one, vests the property in the husband, and clothes him with the legal title. For by the common law, the wife can have no separate property. That object can only be accomplished, by the intervention of trustees. *Haselington* v. *Gill*, 3 *Term R.* 620. *in notis.*

This doctrine is fully recognised, in a recent case in the *English* reports. There, by a marriage settlement, certain stock was vested in trustees, in trust to pay to the intended wife the dividends, *to and for her sole and separate use and benefit, independent of her husband.* The marriage was sol-

emnized, and the parties afterwards separated, and so continued until her death. In a bureau, at her lodgings, was found a sum of money, which was supposed to have been derived from the trust property, as there was no evidence that she had any other source of income. The money was taken, after her decease, by order of one of the executors of her will; and the plaintiff, her husband, brought an action of debt to recover the money so taken. And the court held, that he was entitled to recover; that as soon as the dividends were paid over to her, they became absolutely the property of the husband. And *Coltman*, J. said: "The case of *Carne* v. *Brice*, 7 *M. & W.* 183. appears to go the whole length of the present, and establish, that, although the wife may be entitled to separate property, the dividends arising therefrom vest in the husband. The rule of law is, that in order to protect property from the husband, it must remain in the hands of the wife's trustees." *Tugman* v. *Hopkins*, 4 *Man. & Gran.* 389. (43 *E. C. L.* 205.)

It is further said, that there are cases where the husband will be treated as the trustee of the property of the wife, as in the case of an ante-nuptial agreement. But here was no such agreement. Nor is it shown, that the husband made any agreement, either with the wife or her father. An agreement made by him with the former, in this state, would not be enforced, either at law or in chancery. *Fourth Society in Middletown* v. *Mather*, 15 *Conn. R.* 595.

An agreement with the father, that the husband would hold the property in trust for his wife, might be enforced in chancery, and even render the husband liable in an action at law, at the suit of the father; but would not give this plaintiff the legal title.

It is indeed stated in the motion, that the husband, after the death of his wife, had knowledge of the conveyance, and assented to the same. But the property, upon the conveyance to the wife, became vested in him; and no act of his is shown, by which he became divested of his title.

Finally, it is claimed, that the plaintiff, if he has but an equitable title, can recover upon the last count in his declaration, wherein it is alleged, that *Benedict* agreed to hold the property for the use of his wife, and upon her decease, to transfer it to her legal representative, but was prevented

from *so doing*, by the attachment of the defendant; and the case of *Coleman* v. *Wolcott*, is relied upon, to support the claim.

There the foundation of that action was fraud. Here none is alleged or proved. The case at most is but an ordinary case in trover for the conversion of property, for which the remedy is in favour of him who is entitled to the possession.

It seems to us, therefore, that the evidence offered by the plaintiff, showed no title in him, but one in *Benedict;* and we therefore advise a new trial.

In this opinion Storrs, J. concurred, without qualification.

Hinman, J. I concur in advising that a new trial be granted in this cause, on the ground, that by the conveyance of the furniture in question to the wife of *Benedict*, the legal title vested immediately in the husband; and, as this title still remains in him, the administrator of the wife cannot maintain trover for it. Whether the creditors of the husband could lawfully acquire any title to the property, by their levy upon it, is a question on which I do not wish to be understood as expressing any opinion.

Church, Ch. J. and Ellsworth, J. not having been present when the case was argued, gave no opinion.

New trial to be granted.